**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STERLING FEDERAL BANK, F.S.B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 C 6904 |
| ) | |
| DLJ MORTGAGE CAPITAL, INC., BANK ) | |
| OF AMERICA, N.A., SELECT PORTFOLIO ) | |
| SERVICING, INC. and THE BANK OF ) | |
| NEW YORK MELLON CORP., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Before the court is defendant Bank of New York Mellon's ("BNYM") motion to dismiss plaintiff Sterling Federal Bank, F.S.B.'s amended complaint. For the reasons explained below we deny defendant's motion.

**BACKGROUND**

We will assume that the reader is familiar with our opinion dismissing Sterling's original complaint, which discussed plaintiff's allegations in detail. Sterling Federal Bank, F.S.B. v. DLJ Mortgage Capital, Inc., No. 09 C 6904, 2010 WL 3324705 (N.D. Ill. Aug. 20, 2010) ("Sterling I").

## DISCUSSION

**A.  Standard of Review**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)).  When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint.  Iqbal, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

**B.  Dismissal for Noncompliance with the No-Action Clause**

In Sterling I, we dismissed Sterling's claims against all the defendants except BNYM because Sterling failed to comply with the Pooling and Servicing Agreements' ("PSAs") no-action clauses:

> No Certificateholder shall have any right by virtue or by availing itself of any provisions of this Agreement to institute any suit or proceeding in equity or at law upon or under or with respect to this Agreement, unless such Holder previously shall have given to the Trust Administrator a written notice of an Event of Default and of the continuance thereof, as provided herein, and unless the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates shall also have made written request upon the Trust Administrator to institute such action, suit or proceeding in its own name as Trust Administrator hereunder and shall have offered to the Trust Administrator such reasonable indemnity as it may require against the costs, expenses, and liabilities to be incurred therein or thereby, and the Trust Administrator for 60 days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding; it being understood and intended, and being expressly covenanted by each Certificateholder with every other Certificateholder and the Trust Administrator, that no one or more Holders of Certificates shall have any right in any manner whatever by virtue or by availing itself or themselves of ay provisions of this Agreement to affect, disturb or prejudice the rights of the Holders of any other of the Certificates, or to obtain priority or preference to any other such Holder or to enforce any right under this Agreement, except in the manner herein provided and for the common benefit of all Certificateholder.

(PSA (2002-24) § 12.07.) We concluded that § 12.07 did not apply to Sterling's claims against BNYM because it would be "absurd" to ask BNYM to sue itself. Sterling I, 2010 WL 3324705, *4 (citing Cruden v. Bank of New York, 957 F.2d 961, 968 (2d Cir. 1992) and Peak Partners, LP v. Republic Bank, 191 Fed.Appx. 118, 2006 WL 2243040, *7 n.11 (3d Cir. Aug. 7, 2006)). BNYM effectively conceded that point, but it argued that we should nevertheless enforce § 12.07's other requirements, "including the obligation to

obtain the endorsement of 'Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates.'" Sterling I, 2010 WL 3324705, *4. We rejected BNYM's argument because (1) BNYM did not cite any relevant authority to support it, and (2) it was inconsistent with the holdings in Cruden and Peak Partners. Id.

In its motion to dismiss Sterling's amended complaint, BNYM rehashes its argument that we should enforce the no-action clause's other requirements, even if we excuse Sterling from formally demanding that BNYM sue itself. It is true, as BNYM points out, that neither Cruden nor Peak Partners explicitly addressed whether the no-action clauses in those cases should be enforced in the piecemeal fashion that BNYM advocates here. They simply held that the clauses did not apply to the plaintiffs' claims against the trustees, and we agree.[1] We see no basis, then, to reform the contract to make the 25% voting-rights term (for example) a free-standing requirement applicable to suits against the trustee. (Cf. PSA § 12.07 (Prohibiting suit "unless the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates shall also have made written request upon the Trust Administrator to institute such action . . . .").) If the parties

---

[1] The Cruden court concluded that even though the no-action clause did not apply to plaintiffs' claims against the trustee, it was relevant to the question of when their claims accrued. Cruden, 957 F.2d at 961. The court did not, as BNYM seems to suggest, apply the no-action clause's event-of-default requirement to the plaintiffs' claims against the trustees.

had wanted to impose such a restriction on suits against the trustee, they should have done so explicitly. BNYM cites cases that support severing invalid provisions from otherwise enforceable contracts. See, e.g., In re Balfour MacLaine Int'l, Ltd., 85 F.3d 68, 81 (2d Cir. 1996); see also PSA § 12.06 (requiring severance of "invalid" provisions). Those authorities are irrelevant. The no-action clause is not "invalid" as applied to BNYM. It does not apply to BNYM at all.

**C. Whether Sterling Has Properly Alleged Damages Caused by BNYM's Conduct**

In support of their motion to dismiss Sterling's original complaint, the defendants argued that Sterling failed to allege non-speculative damages. Sterling's theory, as the defendants understood it, was that the defendants' conduct diminished the certificates' "credit support," making a payment default more likely. But Sterling did not allege that such a default had occurred. In its response to defendants' motion Sterling avoided this argument, and instead cited "alternative ways in which defendants' actions have caused concrete, present injuries." Sterling I, 2010 WL 3324705, *8. We concluded that this was an improper attempt to amend the complaint in a responsive pleading, and dismissed Sterling's claims against BNYM, without prejudice, on that basis. Id. Sterling's amended complaint spells out more clearly its theory that BNYM's actions prevented Sterling and other certificateholders from protecting their interests before ratings

agencies downgraded the securities. (Am. Compl. ¶ 50.) Sterling further alleges that "[a]s a result of BNYM's breaches, the financial obligations owed to STERLING and other Certificateholders, including payment of principal and interest was [sic] delayed having not been paid according to the anticipated schedule, thereby causing harm to STERLING and other Certificateholders." (Id. at ¶ 53.) BNYM argues that Sterling's complaint fails to properly allege that BNYM's actions caused Sterling's harm, citing cases decided by New York state courts. See, e.g., US Pack Network Corp. v. Travelers Property Casualty, 840 N.Y.S.2d 35, 36 (N.Y. App. Div. 2007) (concluding on a motion for summary judgment that the defendants' breach did not cause plaintiff's damages); Leigh Management Associates v. Weinstein, 674 N.Y.S.2d 688, 689 (N.Y. App. Div. 1998) ("[P]laintiffs failed to set forth how and in what manner the appellants' preparation of the limited-partnership tax returns, which are not challenged as being inaccurate in any respect or causally linked to plaintiffs' alleged losses resulting from misapplication of partnership assets, constituted malpractice or breach of contract."). The complaint alleges that BNYM's inaction contributed to Sterling's damages. Causation is a question of fact, and Sterling's allegation is not implausible. We conclude that BNYM has adequately alleged damages caused by BNYM's conduct.

**D.  Sterling's "Breach of Fiduciary Duty" Claim**

In Count IV of its amended complaint Sterling has repled its claim for breach of fiduciary duty.  We previously concluded that Sterling had not properly alleged that BNYM owed it a fiduciary duty, but nevertheless construed its complaint to allege that BNYM breached its duty to perform non-discretionary ministerial tasks with due care.  Sterling I, 2010 WL 3324705, *8.  In light of our ruling, Sterling should have amended its claim to clarify that it was relying on that tort.  (Sterling's argument that it is pleading breach of fiduciary duty and breach of the duty to perform ministerial tasks with due care "in the alternative" is nonsensical.)  But we did not specifically require Sterling to amend that portion of its complaint, and we do not think that sending Sterling back to the drawing board to relabel Count IV would serve any useful purpose.  See Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir.1998) ("Instead of lavishing attention on the complaint until the plaintiff gets it just right, a district court should keep the case moving.").  In its reply brief BNYM argues for the first time that the PSAs relieve it of the "ministerial" duties that Sterling seeks to enforce.  (BNYM Reply Mem. at 6-7.)  Sterling alleges that BNYM "knew or should have known" that the information it was receiving from SPS, and passing along to certificateholders and ratings agencies, was inaccurate.  (Am. Compl. ¶¶ 25-28, 36, 40, 48-49.)  We do not read § 10.02(a)(v) to

bar a tort claim based on BNYM's willful blindness. (See, e.g., Am. Compl. at ¶¶ 51-52.) In any event, this issue is undeveloped at best. See Hess v. Reg-Ellen Machine Tool Corp., 423 F.3d 653, 665 (7th Cir. 2005) (arguments raised for the first time in a reply brief are waived). We are not satisfied, at this stage of the case, that the PSAs foreclose Sterling's claim for breach of the duty to perform ministerial tasks with due care. Defendants motion to dismiss Count IV is denied.

## CONCLUSION

BNYM's motion to dismiss (72) is denied. Sterling's motion to file supplemental authority (91) is denied as moot. A status hearing is set for May 18, 2011 at 10:30 a.m.

DATE: May 11, 2011

ENTER: _____
John F. Grady, United States District Judge