**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STERLING FEDERAL BANK, F.S.B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 6904 |
| | ) | |
| THE BANK OF NEW YORK MELLON and | ) | |
| U.S. BANK, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION**</u>

Before the court is U.S. Bank, N.A.'s motion to dismiss. For the reasons explained below, we grant U.S. Bank's motion.

<u>**BACKGROUND**</u>

We will assume that the reader is familiar with our prior opinions in this case. See <u>Sterling Federal Bank, F.S.B. v. DLJ Mortg. Capital, Inc.</u>, No. 09-cv-6904, 2010 WL 3324705 (N.D. Ill. Aug. 20, 2010) ("<u>Sterling I</u>"); <u>Sterling Federal Bank, F.S.B. v. DLJ Mortg. Capital, Inc.</u>, No. 09-cv-6904, 2011 WL 1792710 (N.D. Ill. May 11, 2011) ("<u>Sterling II</u>"). In <u>Sterling I</u>, we dismissed Sterling Federal Bank, F.S.B.'s ("Sterling") claims against DLJ Mortgage Capital, Inc. ("DLJ"), Bank of America, N.A. ("BOA"), and Select Portfolio Servicing, Inc. ("SPS") for failing to comply with the "no action clause" in the Pooling and Service Agreements ("PSAs") governing the mortgage-backed pass-through certificates

acquired by Sterling. <u>See Sterling I</u>, 2010 WL 3324705, *4-5. The
no-action clause provides as follows:

> No Certificateholder shall have any right by virtue or by
> availing itself of any provisions of this Agreement to
> institute any suit or proceeding in equity or at law upon
> or under or with respect to this Agreement, unless such
> Holder previously shall have given to the Trust
> Administrator a written notice of an Event of Default and
> of the continuance thereof, as provided herein, and
> unless the Holders of Certificates evidencing not less
> than 25% of the Voting Rights evidenced by the
> Certificates shall also have made written request upon
> the Trust Administrator to institute such action, suit or
> proceeding in its own name as Trust Administrator
> hereunder and shall have offered to the Trust
> Administrator such reasonable indemnity as it may require
> against the costs, expenses, and liabilities to be
> incurred therein or thereby, and the Trust Administrator
> for 60 days after its receipt of such notice, request and
> offer of indemnity, shall have neglected or refused to
> institute any such action, suit or proceeding; it being
> understood and intended, and being expressly covenanted
> by each Certificateholder with every other
> Certificateholder and the Trust Administrator, that no
> one or more Holders of Certificates shall have any right
> in any manner whatever by virtue or by availing itself or
> themselves of ay provisions of this Agreement to affect,
> disturb or prejudice the rights of the Holders of any
> other of the Certificates, or to obtain priority or
> preference to any other such Holder or to enforce any
> right under this Agreement, except in the manner herein
> provided and for the common benefit of all
> Certificateholders.

(PSA, dated July 1, 2002, attached as Ex. D to Second Am. Compl.,
§ 12.07.)[1] We held that Sterling's claims against DLJ, BOA, and
SPS fell within this provision's broad application to "any suit or

---

[1] There are two "Certificate Series" at issue in this case, governed by
separate PSAs. However, the terms of the PSAs are substantially similar. <u>See</u>
<u>Sterling I</u>, 2010 WL 3324705, *1 n.1.

proceeding in equity or at law upon or under or with respect to [the PSAs]." See Sterling I, 2010 WL 3324705, *5. And Sterling admitted that it had not complied with the procedural hurdles that the no-action clause imposes on such suits. Id. at *4. Therefore, we dismissed without prejudice Sterling's claims against those defendants. However, applying New York law, we concluded that § 12.07 did not apply to Sterling's claims against defendant Bank of New York Mellon ("BNYM"), identified in Sterling's previous filings as the "Trustee" and the "Trust Administrator" under the PSAs. (See Sterling's Resp. to Defs.' Mot. to Dismiss (Dkt. 42) at 17; First Am. Compl. (Dkt. 59) ¶ 7.) We reasoned that it would be "absurd" to ask BNYM to sue itself. See Sterling I, 2010 WL 3324705, *4 (citing Cruden v. Bank of N.Y., 957 F.2d 961, 968 (2d Cir. 1992) and Peak Partners, LP v. Republic Bank, 191 Fed.Appx. 118, 126 n. 11 (3d Cir. 2006). We reaffirmed this conclusion in Sterling II in response to BNYM's motion to dismiss Sterling's amended complaint. See Sterling II, 2011 WL 1792710, *1-2. Sterling has since filed a second amended complaint alleging that U.S. Bank, not BNYM, was the Trustee during the relevant time period. (See Second Am. Compl. ¶ 1.) In Count III of its second amended complaint, Sterling claims that U.S. Bank breached its obligation under § 9.01 of the PSAs to "examine" certain documents provided to U.S. Bank by BNYM (as Trust Administrator). (See id. at ¶¶ 71-74.) U.S. Bank has moved to dismiss Count III on several

grounds, including Sterling's failure to comply with the no-action clause.

## A.    Legal Standard

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.    5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed.2004).    To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 556 (2007)).    When evaluating a motion to dismiss a complaint, we must accept as true all factual allegations in the complaint.    <u>See</u> <u>id.</u> However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).

## B.    Sterling's Failure to Comply with the No-Action Clause

Sterling effectively admits that it did not comply with § 12.07 before filing its claim against U.S. Bank, arguing instead that § 12.07 does not apply.    However, our reasoning in <u>Sterling I</u>

and <u>Sterling II</u> supports the opposite conclusion. We previously
held that the no-action clause does not apply to Sterling's claims
against BNYM because it would be absurd to ask BNYM to sue itself,
<u>see</u> <u>Sterling I</u>, 2010 WL 3324705, *4, not because "trustees" are
categorically exempt from no-action clauses. The PSAs are
contracts, and the parties are entitled to rely on their express
terms. <u>See</u> <u>Cruden</u>, 957 F.2d at 968 (no-action clauses are
"strictly construe[d]"). Sterling's claim that U.S. Bank breached
§ 9.01 arises "under or with respect to" the PSAs, and there is
nothing "absurd" about asking BNYM (as Trust Administrator) to sue
U.S. Bank (as Trustee). BNYM and U.S. Bank are separate entities,
making our previous ruling with respect to DLJ, BOA, and SPS
applicable to U.S. Bank. <u>See</u> <u>Sterling I</u>, 2010 WL 3324705, *5
("There is an important difference between asking the trustee to
sue itself — an 'absurd' requirement that we presume the parties
did not intend — and asking it to sue a third party, even when the
investor alleges wrongdoing by the trustee.").

Sterling's efforts to avoid the clear import of our previous
rulings are unavailing. Sterling argues that the no-action clause
does not apply if the party that the certificateholder wants the
Trust Administrator to sue (in this case, U.S. Bank) does not owe
a duty to the Trust Administrator. (<u>See</u> Sterling Resp. at 4.)
According to Sterling, U.S. Bank, unlike DLJ and SPS, does not owe
any duties to BNYM — it is, in Sterling's words, "above the Trust

Administrator in hierarchy" — and therefore the no-action clause does not apply to claims against U.S. Bank. (<u>Id.</u> at 3-4.) First, Sterling has not cited, nor are we aware of, any legal authority supporting its interpretation of the no-action clause. Second, and more importantly, its argument cannot be squared with the no-action clause's plain language. The no-action clause applies to "*any* suit or proceeding in equity or at law upon or under or with respect to" the PSAs. It is not limited to certificateholder claims based on explicit duties owed to the Trust Administrator by the party the certificateholder wants the Trust Administrator to sue. Indeed, as U.S. Bank points out, this argument misconstrues the no-action clause's purpose. A suit brought by the Trust Administrator pursuant to a certificateholder's demand is not a suit to vindicate the *Trust Administrator's* rights. It is the certificateholder's rights that are at issue. Sterling alleges that it was injured when U.S. Bank breached its duties under the PSAs. As a third-party beneficiary, Sterling has standing to file a claim against U.S. Bank, but to do so it must first comply with the procedures set forth § 12.07. It has not done so, therefore its claim against U.S. Bank must be dismissed.

## C.   <u>Bankers Ins. Co. v. The Bank of New York Mellon</u>, 12-cv-1199

Approximately three months after Sterling's counsel filed this lawsuit, they filed a separate lawsuit on behalf of different certificateholders (Bankers Insurance Company and Bankers Life

Insurance Company, collectively "Bankers") in the Middle District
of Florida. The proceedings in <u>Bankers</u> tracked the proceedings in
this case, and the Florida court's rulings were largely consistent
with our own. Specifically, the Florida court held that § 12.07
barred Bankers's claims against DLJ and SPS,[2] but did not bar its
claims against BNYM. <u>See Bankers Ins. Co. v. DLJ Mortg. Capital,
Inc.</u>, No. 8:10-CV-0419-T-27EAJ, 2011 WL 2470615, *1-2 (M.D. Fla.
June 21, 2011) (citing <u>Sterling I</u> and <u>Sterling II</u>); <u>Bankers Ins.
Co. v. DLJ Mortg. Capital, Inc.</u>, No. 8:10-CV-0419-T-27EAJ, 2011 WL
2470226, *2-4 (M.D. Fla. Mar. 17, 2011) (same); <u>Bankers Ins. Co. v.
DLJ Mortg. Capital, Inc.</u>, No. 8:10-CV-0419-T-27EAJ, 2010 WL
4867533, *2-4 (M.D. Fla. Oct. 8, 2010) (same). As Sterling did in
this case, Bankers belatedly added U.S. Bank as a defendant in the
Florida action. U.S. Bank filed a motion to dismiss Bankers's
complaint substantially similar to the motion it filed in this
case. In the alternative, U.S. Bank asked the Florida court to
transfer the case to this District. The Florida court granted U.S.
Bank's motion to transfer, and denied the motion to dismiss without
prejudice to U.S. Bank refiling the motion after the case was
transferred. (<u>See</u> Order Adopting Report and Recommendation,
<u>Bankers v. The Bank of New York Mellon</u>, 12-cv-1199 (Dkt. 92).)
After <u>Bankers</u> was transferred to this District, we granted the
parties' joint motion to reassign the case to us as related to this

---

[2] BOA was not named as a defendant in <u>Bankers</u>.

case.  Our conclusion that Sterling must comply with § 12.07 before suing U.S. Bank applies equally to Bankers.  Accordingly, we will enter an appropriate order in <u>Bankers</u> dismissing Bankers's claim against U.S. Bank (Count III of its second amended complaint).

### CONCLUSION

U.S. Bank's motion to dismiss [119] is granted.  Count III of Sterling's second amended complaint is dismissed without prejudice.


DATE:          July 30, 2012


ENTER:         _____
               John F. Grady, United States District Judge